UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHAIM SPIRA,

                              Plaintiff,

    v.

TRANS UNION, LLC, *et al.*,

                              Defendants.

No. 21-CV-2367 (KMK)

<u>OPINION & ORDER</u>

<u>Appearances</u>:

Kenneth Willard, Esq.
Mark Rozenberg, Esq.
Stein Saks, PLLC
Hackensack, NJ
*Counsel for Plaintiff*

Brian C. Frontino, Esq.
Strook & Strook & Lavan LLP
Miami, FL
*Counsel for Defendant*

KENNETH M. KARAS, United States District Judge:

        Plaintiff Chaim Spira ("Plaintiff") brings this Action against HSBC Bank USA, N.A.

s/h/a HSBC USA, Inc. ("Defendant" or "HSBC"), alleging that Defendant engaged in unlawful

credit reporting practices in violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C.

§§ 1681, et seq.  (*See* Compl. (Dkt. No. 1).)  Before the Court is Defendant's Motion To Dismiss

pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion").  (*See* Not. of Mot. (Dkt.

No. 57).)  Because the Court finds that Plaintiff lacks standing, the Complaint is dismissed

without prejudice.

# I.  Background

## A.  Factual Background

The following facts are drawn from the Complaint and are assumed to be true for purposes of resolving the instant Motion.  *See Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (per curiam).

Plaintiff alleges that at some point prior to July 22, 2020, HSBC reported certain inaccurate information to Equifax Information Services, LLC ("Equifax")—a credit reporting agency—regarding Plaintiff's account with HSBC.  (*See* Compl. ¶¶ 10, 17, 18.)  Specifically, HSBC "falsely" reported Plaintiff's account status "as 'charged off[,'] in spite of this account containing a $0 balance."  (*Id.* ¶ 18.)  Plaintiff alleges that "Equifax has been reporting this inaccurate information through the issuance of false and inaccurate credit information and consumer reports that it has disseminated to various persons and credit grantors, both known and unknown."  (*Id.* ¶ 19.)

On or about July 22, 2020, Plaintiff notified Equifax that he disputed the accuracy of the reporting of his account with HSBC.  (*See id.* ¶ 20.)  Plaintiff alleges that Equifax thereafter notified HSBC of his dispute, and yet "HSBC failed to timely conduct a reasonable investigation and continued to report false and inaccurate adverse information on the consumer reports of . . . Plaintiff with respect to the disputed account, continuing to include the negative information."  (*Id.* ¶ 22.)  Plaintiff alleges that as a result, he "has suffered a decreased credit score due to the inaccurate information on Plaintiff's credit file, loss of credit, and a chilling and detrimental effect on future applications for credit."  (*Id.* ¶ 26; *see also id.* ¶¶ 103, 116 ("As a result of the conduct, action[,] and inaction of . . . HSBC, . . . Plaintiff suffered damage for the loss of credit, loss of the ability to purchase and benefit from credit, a chilling effect on future

applications for credit, and the mental and emotional pain, anguish, humiliation[,] and embarrassment of credit denials.").)

    B.  Procedural History

Plaintiff filed his Complaint on March 18, 2021, bringing claims under the FCRA against HSBC in addition to TransUnion, LLC ("TransUnion"), Equifax, Wells Fargo Bank, NA ("Wells Fargo"), Barclays Bank Delaware ("Barclays"), and Capital One Bank (USA), NA ("Capital One").  (*See* Compl.)  Plaintiff ultimately settled or voluntarily dismissed his claims against all defendants except HSBC.

On April 16, 2021, Plaintiff filed a notice of settlement with Equifax.  (*See* Dkt. No. 36.) On April 23, 2021, Plaintiff filed a notice of voluntary dismissal of his claims against Capital One, (*see* Dkt. No. 38), which the Court entered on April 29, 2021, (*see* Dkt. No. 39).  On July 13, 2021, Plaintiff filed a joint stipulation of voluntary dismissal of his claims against Equifax, (*see* Dkt. No. 46), and a notice of settlement with TransUnion, (*see* Dkt. No. 47).  The Court entered Plaintiff and Equifax's joint stipulation on July 14, 2021.  (*See* Dkt. No. 48.)  On July 19, 2021, Plaintiff filed a notice of settlement with Wells Fargo, (*see* Dkt. No. 49), which was followed by a stipulation of voluntary dismissal of Plaintiff's claims against Wells Fargo on August 5, 2021, (*see* Dkt. No. 53); the Court entered the Wells Fargo stipulation on August 27, 2021, (*see* Dkt. No. 59).  On August 6, 2021, TransUnion filed a stipulation and order of dismissal with prejudice of Plaintiff's claims against it, (*see* Dkt. No. 54), which the Court entered on August 9, 2021, (*see* Dkt. No. 55).  On December 8, 2021, Plaintiff filed a stipulation of voluntary dismissal of his claims against Barclays Bank, (*see* Dkt. No. 64), which the Court entered on December 9, 2021, (*see* Dkt. No. 65).

Meanwhile, on June 14, 2021, HSBC filed a pre-motion letter in anticipation of filing a motion to dismiss, (*see* Dkt. No. 42), to which Plaintiff responded on June 21, 2021, (*see* Dkt.

No. 44).  The Court held a pre-motion conference on July 26, 2021, (*see* Dkt. (minute entry for July 26, 2021)), and set a briefing schedule, (*see id.*; *see also* Dkt. No. 52).  Defendant filed the instant Motion on August 20, 2021.  (*See* Not. of Mot.; Def.'s Mem. of Law in Supp. of Mot. ("Def.'s Mem.") (Dkt. No. 58).)  Plaintiff filed his response on September 10, 2021.  (*See* Pl.'s Mem. of Law in Opp'n to Mot. ("Pl.'s Mem.") (Dkt. No. 60).)  After seeking and receiving an extension of time, (*see* Dkt. Nos. 61, 62), Defendant filed its Reply on October 1, 2021, (*see* Def.'s Reply Mem. of Law in Supp. of Mot. ("Def.'s Reply Mem.") (Dkt. No. 63)).

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a Rule 12(b)(6) motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  *Id.* (alteration and quotation marks omitted).  Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  Although, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief

4

will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation omitted) (quoting FED. R. CIV. P. 8(a)(2))); *id.* at 678–79. ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegation contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and "draw all reasonable inferences in the plaintiff's favor," *Div. 1181*, 9 F.4th at 94 (citation omitted).  Additionally, "when ruling on [a] Rule 12(b)(6) motion[] to dismiss," district courts are directed to confine their consideration to "the complaint in its entirety, . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  *Bellin v. Zucker*, 6 F.4th 463, 473 (2d Cir. 2021) (quotation marks omitted); *see also Dashnau v. Unilever Mfg. (US), Inc.*, 529 F. Supp. 3d 235, 240 (S.D.N.Y. 2021) (same).

B.  Analysis

Plaintiff brings causes of action for both negligent and willful violation of the FCRA based on Defendant's conduct as laid out above.  (*See* Compl. ¶¶ 95–117.)  Defendant argues that Plaintiff has failed to state a cognizable claim for violation of the FCRA because: (1) Plaintiff has failed to allege a factual inaccuracy as required to state a claim under the FCRA, because Plaintiff's contention that an account cannot both be charged off and carry a $0 balance is a legal dispute, (*see* Def.'s Mem. 3–5); (2) in fact, it is Plaintiff whose claims are factually inaccurate, because an account *can* be both charged off *and* carry a $0 balance, (*see id.* at 5–6); and (3) Plaintiff's claim for negligent violation of the FCRA fails because Plaintiff has not

alleged that he suffered actual damages, (*see id.* at 6–8). Defendant separately urges the Court to dismiss Plaintiff's Complaint as "yet another in a series of cases filed by debtors attempting to leverage meritless FCRA claims and pressure creditors to delete accurate information regarding their past-due debts." (*Id.* at 8–9.)

While Defendant has neither brought a Rule 12(b)(1) motion nor otherwise meaningfully raised the issue of whether Plaintiff has standing—making only a single reference to standing in its opening brief, (*see id.* at 7)—"[b]ecause the standing issue goes to [the] Court's subject matter jurisdiction, it can be raised sua sponte." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005) (italics omitted); *see also Green Haven Prison Preparative Meeting of Religious Soc'y of Friends v. N.Y. Dep't of Corr. & Cmty. Supervision*, 16 F.4th 67, 78 (2d Cir. 2021) ("Because the question of standing goes to the constitutional limitations on the 'judicial Power of the United States,' which is limited to resolving 'Cases' or 'Controversies,' we are entitled at any time sua sponte to delve into the issue of standing even if [the] defendants do not raise the issue." (citation and italics omitted) (quoting U.S. CONST. art. III)), *cert. denied*, — U.S. — , 2022 WL 1295719 (May 2, 2022). And because absent subject matter jurisdiction over Plaintiff's claims, the Court lacks a legal basis to examine their merits, the Court will consider the question of standing at the outset. *See Can v. United States*, 14 F.3d 160, 162 n.1 (2d Cir. 1994) (explaining that, "in most instances[,] the question of whether a court has subject-matter jurisdiction is, conventionally and properly, the first question a court is called on to consider").

### 1. Standard for Constitutional Standing

Standing asks "whether the litigant is entitled to have the [C]ourt decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). "This inquiry involves both constitutional limitations on federal-court jurisdiction and prudential limitations on

its exercise." *Id.*; *see also Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.a.r.l.*, 790 F.3d

411, 416–17 (2d Cir. 2015) ("A district court properly dismisses an action under Fed. R. Civ. P.

12(b)(1) for lack of subject matter jurisdiction if the court lacks the statutory or constitutional

power to adjudicate it, such as when . . . the plaintiff lacks constitutional standing." (quotation

marks and citation omitted)); *All. for Env't Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d

82, 88 n.6 (2d Cir. 2006) ("Although lack of Article III standing and subject matter jurisdiction

are distinct concepts, Article III standing remains, as we have noted, a limitation on the authority

of a federal court to exercise jurisdiction." (citation omitted)).  "Constitutional standing refers to

the requirements that parties suing in federal court establish that a 'Case' or 'Controversy' exists

within the meaning of Article III of the United States Constitution." *Am. Psychiatric Ass'n v.

Anthem Health Plans, Inc.*, 821 F.3d 352, 358 (2d Cir. 2016).  Constitutional standing requires:

> (1) that the plaintiff ha[s] suffered an "injury in fact"—that is, "an invasion of a
> legally protected interest which is (a) concrete and particularized and (b) actual or
> imminent, not conjectural or hypothetical"; (2) that there is "a causal connection
> between the injury and the conduct" of which the plaintiff complains; and (3) that
> it is "likely . . . that the injury will be redressed by a favorable decision."

*Id.* (second alteration in original) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61

(1992)).  "The party invoking federal jurisdiction bears the burden of establishing these

elements." *Lujan*, 504 U.S. at 561.

The Supreme Court recently issued a decisive ruling on the issue of constitutional

standing in *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021), which, along with its Second

Circuit progeny, *Maddox v. Bank of N.Y. Mellon Tr. Co., N.A.*, 19 F.4th 58 (2d Cir. 2021), makes

clear that plaintiffs who allege only a "procedural" or "informational" harm lack standing.

*TransUnion* involved a class of 8,185 plaintiffs who alleged that TransUnion, a credit

reporting agency, had violated the FCRA via its use of a system that had inaccurately flagged the

plaintiffs' credit files as "potential match[es]" to persons identified as national security risks by

the Treasury Department's Office of Foreign Assets Control ("OFAC"). *TransUnion*, 141 S. Ct. at 2200–02. The Supreme Court ultimately bifurcated the class, finding that 1,853 class members whose inaccurately flagged credit reports had been disseminated to third parties had standing while the other 6,332 class members did not, because "[p]ublication is essential to liability in a suit for defamation." *Id.* at 2208–09 (quotation marks omitted). In short, the Supreme Court held: "No concrete harm, no standing." *Id.* at 2200.

*Maddox* involved two plaintiffs who alleged that the Bank of New York Mellon ("BNY Mellon") had failed to file their satisfaction of mortgage within 30 days of the plaintiffs' full satisfaction of their mortgage loan, as required under New York's satisfaction-of-mortgage statues. *Maddox*, 19 F.4th at 59–60. The Second Circuit had initially ruled, in a pre-*TransUnion* opinion, that the plaintiffs' allegations had established an injury in fact sufficient to confer constitutional standing, because BNY Mellon's violation of the statutes "exposed [the plaintiffs] to a material risk of concrete harm, including the risk of not being able to borrow during the period of delay." *Id.* at 62 (quotation marks and alteration omitted). After this opinion, however, BNY Mellon filed a petition for rehearing and the Supreme Court decided *TransUnion*, leading the Second Circuit to withdraw its previous opinion and rule that because the mortgagor-plaintiffs failed to allege that they had actually suffered any actionable reputational harm (including or in addition to any adverse credit reporting to third parties) or monetary harm during the lender-defendant's delay in recording the plaintiffs' satisfaction of the mortgage loan, they lacked standing. *Id.* at 64–65.

District courts following *TransUnion* and *Maddox* assessing claims brought pursuant to both the FCRA and the Fair Debt Collection Practices Act ("FDCPA"), "an analogous statute," *Adler v. Penn Credit Corp.*, No. 19-CV-7084, 2022 WL 744031, at *8 (S.D.N.Y. Mar. 11, 2022)

(quoting *Sputz v. Alltran Fin., LP*, No. 21-CV-4663, 2021 WL 5772033, at *6 (S.D.N.Y. Dec. 5, 2021)), have uniformly held that absent specific allegations of reputational or monetary harm, plaintiffs lack constitutional standing, *see, e.g.*, *Gross v. TransUnion, LLC*, — F. Supp. 3d — , 2022 WL 2116669, at *3 (E.D.N.Y. June 13, 2022) (holding, in FCRA context, that where the plaintiff's "alleged harms are not expenses, costs, any specific lost credit opportunity, or specific emotional injuries," the allegations of the complaint "fail[ed] to show how [the defendant's] credit alleged error caused [the] plaintiff to suffer a 'concrete and particularized' harm"); *Zlotnick v. Equifax Info. Servs., LLC*, — F. Supp. 3d — , 2022 WL 351996, at *2 (E.D.N.Y. Feb. 3, 2022) (holding, in FCRA context, that "conclusory allegations" of "mental and emotional pain, anguish, humiliation, and embarrassment of credit denial," without more, cannot confer constitutional standing); *Williams v. Portfolio Recovery Assocs., LLC*, Nos. 21-CV-5656, 21-CV-5662, 21-CV-5968, 21-CV-5970, 2022 WL 256510, at *3 (E.D.N.Y. Jan. 27, 2022) (remanding the plaintiffs' FDCPA claims due to lack of subject matter jurisdiction, finding that by alleging only that the plaintiffs' inaccurate credit data (and related information) was provided by the defendant to a third-party vendor, "no actual tangible harm" was alleged by the plaintiffs); *see also Adler*, 2022 WL 744031, at *7–8 (reviewing cases in which courts have dismissed claims on standing grounds where the plaintiffs failed to allege a concrete harm).

### 2.  Application

Here, the Court finds that Plaintiff has failed to demonstrate that he suffered any concrete harm.  While, technically speaking, Plaintiff has alleged that the allegedly inaccurate information as to his HSBC account was disseminated to a third party—Equifax, (*see* Compl. ¶ 18)—it is clear that in this context, not all "third parties" are created equal.  For instance, in the wake of *TransUnion* and *Maddox*, courts have rejected the so-called "mailing-vendor theory," whereby plaintiffs attempted to allege standing in FCRA and FDCPA cases by alleging that the

defendants had, for instance, "conveyed 'private information' to third-party vendors . . . so the vendors could draft and mail collection letters to each [p]laintiff regarding his debt obligations." *Ciccone v. Cavalry Portfolio Servs., LLC*, Nos. 21-CV-2428, 21-CV-3764, 2021 WL 5591725, at *1 (E.D.N.Y. Nov. 29, 2021).  Though mailing vendors are "third parties," courts have reasoned that the dissemination to mailing vendors does not constitute concrete harm because (1) as the Supreme Court observed in dicta in *TransUnion*, "'[m]any American courts did not traditionally recognize intra-company disclosures as actionable publications for purposes of the tort of defamation[,] [n]or have they necessarily recognized disclosures to printing vendors as actionable publications,'" *In re FDCPA Mailing Vendor Cases*, 551 F. Supp. 3d 57, 64 (E.D.N.Y. 2021) (quoting *TransUnion*, 141 S. Ct. at 2210 n.6); (2) "the specter of potential future release of information by the mailing vendor" is a "speculative claim[] of potential future harm," which cannot support Article III standing, *id.*; and (3) the mailing of a collection letter "is a far cry from extreme and outrageous conduct" sufficient to confer standing based on an analogy to the common law tort of invasion of privacy, *id.* at 65 (quotation marks omitted); *accord Ciccone*, 2021 WL 5591725, at *3–5 (similar); *see also Cavazzini v. MRS Assocs.*, — F. Supp. 3d — , 2021 WL 5770273, at *6 (E.D.N.Y. Dec. 6, 2021) (explaining, in FDCPA context, that "Congress intended to target certain especially harmful debt collection practices— not all communications by debt collectors to third parties"); *Sputz*, 2021 WL 5772033, at *4 (rejecting a mailing-vendor theory of liability in FDCPA case where "[the] [p]laintiff does not allege that anyone has read his information rather than merely processed it, or that there's otherwise been publicity," and therefore concluding that the plaintiff "has not alleged an injury traditionally recognized in American courts" (alterations and quotation marks omitted)).

The Court sees no reason not to employ the same logic here. The only third party that Plaintiff specifically alleges received the allegedly inaccurate information regarding his HSBC account is Equifax, a credit reporting agency "engaged in the business of assembling, evaluating[,] and disbursing information concerning consumers for the purpose of furnishing consumer reports . . . to third parties." (Compl. ¶¶ 10, 18.) But credit reporting agencies like Equifax are not the type of third parties contemplated by the Supreme Court in *TransUnion*; rather, the Supreme Court clearly contemplated potential creditors:

> The standing inquiry in this case thus distinguishes between (i) credit files that consumer reporting agencies maintain internally and (ii) the consumer credit reports that consumer reporting agencies disseminate to third-party creditors. The mere presence of an inaccuracy in an internal credit file, if it is not disclosed to a third party, causes no concrete harm. In cases such as these where allegedly inaccurate or misleading information sits in a company database, the plaintiffs' harm is roughly the same, legally speaking, as if someone wrote a defamatory letter and then stored it in her desk drawer. A letter that is not sent does not harm anyone, no matter how insulting the letter is. So too here.

*TransUnion*, 141 S. Ct. at 2210; *see also Campbell v. Portfolio Recovery Assocs.*, No. 21-CV-1322, 2022 WL 657225, at *2 (E.D.N.Y. Mar. 4, 2022) ("[T]he distribution of inaccurate information to a credit reporting agency, as opposed to a potential creditor, . . . does not constitute or cause concrete injury for standing purposes.").

With dissemination to Equifax off the table as a basis for standing, Plaintiff is left with only a set of conclusory allegations that closely mirror allegations that other courts have routinely held do not state a concrete injury. Specifically, Plaintiff alleges that (1) "Equifax has been reporting this inaccurate information [concerning his HSBC account] through the issuance of false and inaccurate credit information and consumer reports that it has disseminated to various persons and creditor grantors, both known and unknown," (Compl. ¶ 19); (2) "Plaintiff has suffered a decreased credit score due to the inaccurate information on Plaintiff's credit file, loss of credit, and a chilling and detrimental effect on future applications for credit," (*id.* ¶ 26);

and (3) "Plaintiff suffered damage for the loss of credit, loss of the ability to purchase and benefit

from credit, a chilling effect on future applications for credit, and the mental and emotional pain,

anguish, humiliation[,] and embarrassment of credit denials," (*id.* ¶¶ 103, 116).  However, these

precise allegations have been rejected as failing to state a concrete injury in *Zlotnick*, in which a

court in the Eastern District of New York explained that:

> Despite [the] plaintiff's conclusory allegations that "Equifax has been reporting this
> inaccurate information through the issuance of false and inaccurate credit
> information and consumer reports that it has disseminated to various persons and
> credit grantors, both known and unknown, no actual dissemination is alleged.  [The]
> [p]laintiff alleges that as a result of all the defendants' actions he "suffered damage
> by loss of credit, loss of ability to purchase and benefit from credit, a chilling effect
> on future applications for credit, and the mental and emotional pain, anguish,
> humiliation[,] and embarrassment of credit denial."  Thus, while [the] plaintiff
> claims that his credit score was lowered as a result of the alleged improper
> reporting, he fails to allege any particularized injury or actual dissemination to
> third-party creditors.  [The] [p]laintiff's allegations that he suffered a "chilling
> effect on future applications for credit," without more is unavailing because,
> "allegations of *possible* future injury are not sufficient."  Instead, [the] plaintiff
> must allege that the exposure to the risk of future harm itself causes a separate
> concrete harm.  [The] [p]laintiff does allege that he suffered "mental and emotional
> pain," however such conclusory assertions do not confer standing.  Although there
> may be instances where emotional harm satisfies the Article III injury-in-fact
> requirement, such claims must be supported by sufficient allegations.

2022 WL 351996, at *2 (citations omitted).  Other courts in the Second Circuit have rejected

very similar allegations as failing to state a concrete injury.  *See, e.g.*, *Gross*, 2022 WL 2116669,

at *3 (explaining that "[t]he only allegations that could support standing in the complaint are that

[the] plaintiff suffered an 'injury to his credit worthiness,' 'increased difficulty obtaining credit,'

and 'embarrassment, humiliation, and other emotional injuries,'" and that "these conclusory

allegations are insufficient" to demonstrate standing); *Wan v. Trans Union LLC*, No. 22-CV-115,

2022 WL 955290, at *1–2 (E.D.N.Y. Mar. 30, 2022) (finding no standing because (1) "[the]

[p]laintiff's allegations that she suffered 'limited credit opportunities' and harm to her 'otherwise

positive credit' do not constitute concrete injury" absent "an allegation that these circumstances

resulted in a materialized injury[] or a sufficiently imminent and substantial risk of injury" and (2) "[the] [p]laintiff's allegations that inaccurate information about her was distributed . . . to one or more third parties similarly does not constitute concrete injury because the complaint does not clearly allege any facts demonstrating disclosure to third parties" (quotation marks omitted)).

The Court thus finds that Plaintiff has failed to allege that he suffered any concrete injury and therefore does not have Article III standing to pursue his FCRA claims. Accordingly, the Court lacks subject matter jurisdiction over Plaintiff's claims against HSBC.

## III.  Conclusion

For the foregoing reasons, the Complaint is dismissed for lack of subject matter jurisdiction. The Clerk of Court is directed to terminate the pending motion. (*See* Dkt. No. 57.)

The dismissal is—as it must be—without prejudice. *See Grauman v. Equifax Info. Servs., LLC*, 549 F. Supp. 3d 285, 293 n.5 (E.D.N.Y. 2021) (explaining, in FCRA case dismissed for lack of standing, and therefore lack of subject matter jurisdiction, that "[d]ismissal must be without prejudice because 'when a case is dismissed for lack of federal subject matter jurisdiction,' including for lack of standing, 'Article III deprives federal courts of the power to dismiss the case with prejudice.'" (alteration omitted) (quoting *Katz v. Donna Karan Co.*, 872 F.3d 114, 121 (2d Cir. 2017))).

To the extent Plaintiff has a good faith basis for filing an amended complaint setting forth a sufficiently concrete injury to confer standing, he must do so within 30 days of the date of this Opinion & Order.

SO ORDERED.

Dated:   July 19, 2022
         White Plains, New York

_____
KENNETH M. KARAS
United States District Judge

14